IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CASE NO. 2:17-CR-487-WKW |
| | ) | (WO) |
| LAQUANDA GILMORE GARROTT | ) | |

# MEMORANDUM OPINION AND ORDER

This is a case where the time does not fit the crime; or, more specifically, the offender. LaQuanda Gilmore Garrott was charged in a November 1, 2017 indictment with ten counts of aiding and assisting in the filing of false federal income tax returns in violation of 26 U.S.C. § 7206(2). Each count carries a statutory maximum sentence of 3 years' imprisonment and a $100,000 fine. *See* 26 U.S.C. § 7206. Per a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(A), Garrott pleaded guilty to only *one* of those counts. (Doc. # 28.) The government promised to move to dismiss the other nine counts at sentencing.

When it came time for sentencing, it became clear that this plea agreement would result in an unreasonable sentence. The presentence report revealed Garrott's extensive criminal history, including no less than eighty-seven previous convictions, detailed below. With a total offense level of 22 and a criminal history category of III, Garrott's guidelines range would have been 51 to 63 months, without an acceptance-of-responsibility reduction. But because she pleaded guilty

to just one count, the plea agreement limits Garrott's sentence to no more than the statutory maximum of 36 months' imprisonment.

This court has a duty to "impose a sentence sufficient, but not greater than necessary, to comply" with the statutory purposes of sentencing. 18 U.S.C. § 3553(a). These purposes include the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," *see id.* § 3553(a)(2)(A), "to afford adequate deterrence to criminal conduct," *see id.* § 3553(a)(2)(B), and "to protect the public from further crimes" of Garrott, *see id.* § 3553(a)(2)(C). In evaluating whether the sentence furthers these purposes, the court must consider "the nature and circumstances of the offense and the history and characteristics" of Garrott. *See id.* § 3553(a)(1).

Considering Congress's sentencing mandate and the history and characteristics of Garrott, the court is convinced that a sentence of 36 months would not merely be unreasonable but would be outright *irrational*. The presentence report showed that Garrott has *seventy-nine* convictions for writing bad checks, four for theft, one for reckless endangerment, one for domestic violence and harassment, one for giving a false name to law enforcement, and one for driving with a revoked license and using a license plate to conceal one's identity. So far, however, Garrott has managed to serve, by the court's estimation,

only 13 days' custody on those prior convictions, not counting 30 days served on a probation revocation. Fourteen of Garrott's custodial sentences were suspended. Garrott was ordered to pay restitution at least twelve times, and still owes at least $6,680.71 in unpaid restitution. Additionally, the court calculates that Garrott has been in the criminal justice system — by serving probation, by being subject to an unpaid restitution order, or, for most of the time, *both* — uninterrupted, from September 23, 2003, to the present.[1] The sheer volume of criminal conduct, as well as its nature — rife with falsity and fraud — demonstrates the impropriety of a 36-month sentence.

More than criminal history is relevant here. Garrott's relevant conduct, according to the presentence report, is much more serious than the ten pending charges suggest. Garrott submitted returns under three different electronic filing identification numbers (EFIN), filed approximately 100 false tax returns — totaling $674,372 in fraudulent refunds — which were all paid out by the IRS.

Put simply, 36 months' imprisonment would thwart the purposes of § 3553(a). With the guidelines in play, Garrott's guidelines range would be as high as 51 to 63 months, depending on whether she receives an acceptance-of-responsibility reduction. Such a properly calculated guidelines sentence may be presumed reasonable on appeal. *See Rita v. United States*, 551 U.S. 338, 347

---

[1] An analysis of Garrott's criminal history is included below as the court's Exhibit A.

(2007). And were all ten counts in play, Garrott would potentially be facing a 30-year maximum sentence.

If Garrott wishes to withdraw her plea, the court will set a date for the next Montgomery trial term. The court expresses no view on either the weight or the nature of the evidence against Garrott, *see United States v. Diaz*, 138 F.3d 1359, 1363 (11th Cir. 1998), *abrogated on other grounds by United States v. Davila*, 569 U.S. 597 (2013), or what sentence Garrott would receive if she were found guilty on some or all of the ten counts, *see United States v. Bruce*, 976 F.2d 552, 555–58 (9th Cir. 1992), *abrogated on other grounds by United States v. Davila*, 569 U.S. 597 (2013). But it is not inappropriate for the court to express its view that a particular sentence is too lenient: "A decision that a plea bargain will result in the defendant's receiving too light a sentence under the circumstances of the case is a sound reason for a judge's refusing to accept the agreement." *United States v. Bean*, 564 F.2d 700, 704 (5th Cir. 1977).

Finally, Garrott's belated motion for a status conference warrants brief mention. Garrott, through counsel, sought a status conference so the "parties can discuss with the Court its concerns regarding the first plea agreement in order to try to fashion a new plea agreement or decide to go to trial." (Doc. # 63.) Two things should be said in response. First, the court made its view of a 36-month sentence clear at the January 16, 2019 hearing when it brought up Garrott's

extensive criminal history, including seventy-nine bad check convictions. Second, this motion borders on an invitation for the court to engage in plea negotiations, which of course it cannot do. *See* Fed. R. Crim. P. 11(c)(1). The court declines to say what an appropriate sentence is in this case. It will only say that 36 months' imprisonment is *inappropriate*, for the reasons described.

Relatedly, Garrott did not follow the court's instructions in the January 16, 2019 hearing. After rejecting the plea agreement, the court asked Garrott and her counsel to talk to the government and notify the court of her intentions within two weeks. Garrott did not do so. Instead, she filed the motion for status conference less than a week before the rescheduled sentencing. The court needs to know Garrott's intentions so it can determine how to proceed.

Accordingly, it is ORDERED that Garrott is directed to confer with the government and file a written notice with the court **on or before March 6, 2019**, stating whether she still intends to plead guilty or wants to go to trial.[2]

DONE this 20th day of February, 2019.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE

---

[2] Another binding plea agreement — under Rule 11(c)(1)(A) or (c)(1)(C) — after a binding plea agreement has been rejected, would most likely be viewed as a guess as to what the judge is thinking, or bait to catch the best deal. Until there is a sentencing hearing, the court maintains, as it should, an open mind as to what constitutes a reasonable sentence.

5

# EXHIBIT A

## LaQuanda Gilmore Garrott

### Criminal History Summary

| Conviction | No. of Counts | No. of FTP/FTA | Probation? | Custody? | Probation Revoked? | Fine? | Restitution? |
|---|---|---|---|---|---|---|---|
| Reckless Endangerment (1/3/03) | 1 | | | 30 days custody, split, 5 days imposed | | $250 | |
| False Name to LE (2/19/03) | 1 | | Informal | | | Yes | |
| DV / Harassment (5/7/03) | 1 | | | 30 days, suspended | | Yes | |
| Theft 3rd (6/11/03) | 1 | | | | | Yes | |
| Theft 3rd (9/23/03) | 1 | | 1 year unsupervised | 10 days, suspended | | Yes | |
| Bad Check (7/23/04) | 11 | 4 FTP | 1 year | 12 months, suspended | | Yes | Yes, paid in full 3/21/13 |
| Bad Check (11/4/04) | 1 | 1 FTP | | | | Yes | Yes, paid in full 7/19/2010 |
| Bad Check (9/10/04) | 9 | 2 FTA | 1 year | 12 months, suspended | Extended 6 months, then removed early | | Yes, paid in full 5/3/2013 |

| Charge | # | FTA/FTP | Probation | Jail | Revocation | Fine | Restitution |
|---|---|---|---|---|---|---|---|
| Bad Check (10/3/08) | 11 | | 1 year | 1 year, suspended | Extended 6 months | | Yes |
| Bad Check (9/9/09) | 1 | | 2 years | 1 year, suspended | | Yes | |
| Bad Check (1/12/10) | 5 | 1 FTA | 2 years | 30 days, suspended | | | Yes, owes $2,042.76 |
| Bad Check (6/22/12) | 3 | 1 FTP | | 1 day (time served) | | $500 | |
| Theft 3rd (7/25/12) | 1 | | 2 years unsupervised | 1 year, suspended | | Yes | Yes, paid in full 2/11/13 |
| Theft 3rd (8/22/17) | 1 | | 3 years | 24 months, suspended | Yes, 30 days custody; another revocation hr'g scheduled | Yes | Yes, owes $2,289 |
| Bad Check (8/10/16) | 4 | 1 FTP, 1 FTA | 2 years unsupervised | 1 year, suspended | | | Yes, owes $2,348.95 |
| DWR/License Plate/Window Tint (1/5/17) | 1 | | 1 year | 7 days, time served | Violation affidavit filed, warrant issued | Yes | |
| Bad Check (5/14/18) | 10 | | 10 years unsupervised | 1 year, suspended | | Yes | Yes |
| Bad Check (5/14/18) | 10 | | 10 years unsupervised | 1 year, suspended | | Yes | Yes |
| Bad Check (5/14/18) | 10 | | 10 years unsupervised | 1 year, suspended | | Yes | Yes |
| Bad Check (5/14/18) | 4 | | 10 years unsupervised | 1 year, suspended | | Yes | Yes |

| TOTALS | 79 bad check | **7 failures to pay** | **56 years probation** (aggregate; some terms effectively run concurrently) | **14 suspended sentences** | Probation extended twice | $750+ (unclear from the record) | **Currently owes $6,680.71 in unpaid restitution** |
|---|---|---|---|---|---|---|---|
| | 4 theft (shoplifting) | **4 failures to appear** | | 13 days on all counts + 30 days on probation revocation = | Revoked once, another revocation hr'g scheduled for same probation | | |
| | 1 reckless endangerment | | | **43 days total time served** | | | |
| | 1 DV / harassment | | | | | | |
| | 1 false name to law enforcement | | | | Violation affidavit filed and warrant issued in another | | |
| | 1 driving while revoked, using license plate to conceal identity, window tint violation | | | | | | |
| | **87 total convictions in 15 years** | | | | | | |

KEY:

**RED: Crime involved violence**

**BLUE: Crime involved falsity/fraud**

**GREEN: Property crimes**

> The four sets of bad-check convictions on 5/14/18, although sentenced on the same day, are based on separate conduct and appear to arise out of four separate charging instruments.

